IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRANDY J. RANDALL,<br><br>      Plaintiff,<br><br>vs.<br><br>KILOLO KIJAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING THE ALJ'S DECISION AND DISMISSING PLAINTIFF'S APPEAL<br><br>Case No. 2:21-CV-00616-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff Brandy J. Randall's ("Plaintiff") appeal of the Social Security Administration's denial of her claim for disability under Title XVI of the Social Security Act. The court has jurisdiction to review the final decision of the Commissioner of the Social Security Administration under the Social Security Act, 42 U.S.C. § 405(g). On April 26, 2022, the court held oral argument on Plaintiff's appeal. At the hearing, Plaintiff was represented by Andrew J. Reichardt, and Defendant was represented by Jennifer A. Randall. The court took the matter under advisement. Having fully considered the parties' briefs and arguments, the administrative record, and the law and facts relevant to the appeal, the court enters the following Memorandum Decision and Order affirming the Social Security Administration's decision.

## BACKGROUND

On August 6, 2019, Plaintiff applied for a Supplemental Security Income Benefits under Title XVI of the Social Security Act alleging disability beginning October 1, 2010. Plaintiff's claim was denied initially on February 11, 2020, and denied again upon reconsideration on July

1

23, 2020. Plaintiff made a timely request for an administrative hearing. An administrative hearing was held on April 6, 2021 before Administrative Law Judge Jeffrey Mastin (the "ALJ"). During the hearing, Plaintiff amended her alleged onset of disability to July 23, 2019. The ALJ denied benefits by decision dated April 21, 2021. Plaintiff appealed the denial of benefits to Social Security's Appeals Council. The Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff was born in 1981, completed high school, and worked in jobs including dispatcher and customer service representative. Plaintiff alleged in this case that, beginning in July 2019, she was unable to do her past work or any other work due to impairments including Addison's disease, cervical and lumbar disc disease, DJD of the shoulders, obesity, asthma, anxiety with agoraphobia, and bipolar disorder. Regarding her anxiety, Plaintiff reported that her social anxiety to be so severe that she needs someone to accompany her to the store, even to "a little store in my neighborhood."

The medical record before the ALJ reflects conditions including degenerative changes in Plaintiff's spine and left knee, asthma, obesity, anxiety, and depression. Treatment included physical therapy, injections, medication, and counseling. Plaintiff also had gastric sleeve surgery in October 2020, after which she lost 70 pounds. Examinations at times showed a mildly abnormal gait, tenderness, or reduced range of motion, but also showed that Plaintiff walked independently, demonstrated intact strength, and had normal cognition, attention, and memory.

In January 2020, Plaintiff presented to John Hardy, Ph.D., for a psychological evaluation in relation to her Social Security disability claim. She expressed anxiety when going out into public, such as "going into any stores." Plaintiff also complained of worsening memory problems and said she could "probably not" remember something important presented to her one

hour earlier. Dr. Hardy observed that Plaintiff "seemed to be gauging her responses during the interview at several points". On examination, Plaintiff was able to remember and correctly recite all four steps of a four-step task that was presented verbally, and to remember 3/3 unrelated items immediately and with a 10-minute delay.

In July 2020, Plaintiff presented to Brian Paulson, PA-C, for a physical evaluation in relation to her Social Security disability claim. She was five feet five inches tall and weighed 367 pounds. On examination, Plaintiff was alert, pleasant, cooperative, and in no acute distress. She had tenderness to palpation of her neck and some limitations in flexibility and movement due to her weight but walked with a normal gait and had normal muscle strength in her arms and legs.

The record reflects the following medical source statements in relation to Plaintiff's Social Security disability claim. In May 2020, Plaintiff's counselor, Lani Ete, LCMHC, submitted a statement that Plaintiff struggled at times with memory, but her reasoning and judgment were intact, she was always pleasant, and she was able to go to the store unassisted and drive herself there. In July 2020, Brian Paulson stated that Plaintiff may have limitations related to activities such as heavy or repeated lifting/carrying, prolonged walking, or repeated bending, crouching, or stooping. During the administrative proceedings, state agency psychologists Maria Yapondjian-Alvarado, Psy.D., and Rosemarie Carlson, Ph.D., reviewed the record and assessed that Plaintiff was capable of at least simple work with no high production requirements and reduced interpersonal contact. State agency physicians Hilda Martin, M.D., and Ralph McKay, M.D., reviewed the record and assessed that Plaintiff had abilities consistent with sedentary work.

## LEGAL STANDARD

To be found "disabled" under the Social Security Act, the plaintiff must establish her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 416.920.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id*. § 416.920(b). At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. *Id*. § 416.920(c). At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet, or be considered medically equal to, the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. §§ 416.920(d). Before considering step four, the ALJ must determine the claimant's residual functional capacity. *Id*. § 416.920(e). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. *Id*. § 416.920(f). At the last step, the ALJ must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. *Id*. § 416.920(g).

## ALJ's DECISION

The ALJ followed the five-step sequential evaluation for assessing Social Security disability claims. At step one, the ALJ determined that Plaintiff had not performed substantial gainful activity since July 23, 2019. At step two, the ALJ determined Plaintiff suffers from the following severe impairments: degenerative disc disease, degenerative joint disease, asthma,

4

obesity, depressive disorder, and anxiety disorder. At step three, the ALJ determined that none of Plaintiff's impairments satisfied the requirements of an impairment listed in 20 C.F.R. § 404, Subpart P, App'x 1.

Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), which reflects the most a claimant can still do despite her impairments. Based on the entire record, the ALJ found that Plaintiff had the RFC to perform a reduced range of sedentary work, with limitations to simple instructions and work-related decisions; no more than occasional changes in a routine work setting; no production-rate pace, sharing of job tasks, or multi-tasking; no more than occasional interaction with co-workers and supervisors; and no interaction with the public.

At step four, the ALJ found that, with these limitations, Plaintiff was unable to perform her past skilled work. Then, at step five, the ALJ found with support from a vocational expert's testimony that, given her RFC limitations and vocational profile, Plaintiff could perform unskilled sedentary work in the national economy. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.

## STANDARD OF REVIEW

The court independently determines "whether the ALJ's decision is 'free from legal error and supported by substantial evidence.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2006) (*quoting Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005)). Under 42 U.S.C. § 405(g), "[t]he findings of the Commission of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052. Although the court "will 'not

reweigh the evidence or retry the case,'" it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

## ANALYSIS

In the ALJ's decision denying Plaintiff's claim, the ALJ included the following paragraph of language in two separate footnotes:

> While the claimant contends that her functional abilities are severely limited, it is difficult to reconcile the fact that the claimant, throughout the period of alleged total disability, reported she continued to operate a motor vehicle. The operation of a vehicle is a very dynamic task in a changing environment that is largely influenced by the driver. Since the primary role of any motor vehicle operator is the safe control of the vehicle within the traffic environment, driving can be considered a complex task that requires the making of continuous decisions/judgment calls. It also requires social interaction, and the ability to multitask while dealing with external and internal stimuli. Driving as an activity is therefore made up of strategic decisions (i.e. route-choice while driving, mirror use, vehicle speed, vehicle condition, response to emergency vehicles, etc.), maneuvering decisions (i.e. reaction to: the behavior of other traffic participants, road hazards, pedestrians, animals, etc.), and control decisions (i.e. basic vehicle operation, radio and/or cellphone operation, etc.), all of which indicate functioning at a level in excess of that alleged by the claimant. Nevertheless, when demand exceeds a driver's capacity, it may result in affected performance; however, in the instant matter, it is clear from the record that, at least at times relevant to the issue of disability, the claimant retained the cognitive ability to drive, and the fact she was capable of such a complex task was considered when assessing the severity of his [sic] allegations regarding the aforementioned mental disorders.

Tr. 23, 24.

Both of these footnotes were tied to sentences referring to Plaintiff's ability to drive – both within the section where the ALJ analyzes Plaintiff's symptoms to support his RFC finding. At the hearing on the current motion before the court, Defendant's counsel explained that this language was included in order to address what the ALJ believed were inconsistencies in the record regarding Plaintiff's ability to drive.

In the present motion, Plaintiff argues that the ALJ over-relied on Plaintiff's ability to drive and this copied/pasted language found in two footnotes. It is clear from the paragraph language itself that the ALJ did consider these footnotes while making the RFC determination: "the fact she was capable of such a complex task was considered when assessing the severity of his [sic] allegations regarding the aforementioned mental disorders." Tr. 23, 24. It is permissible for the ALJ to have considered Plaintiff's ability to drive while evaluating her allegations of disabling limitations. *See Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979). However, Plaintiff asserts that the ALJ is not an expert on the subject of what driving reveals about functional abilities, and the ALJ cites to no authority to support the presumptions in the footnotes. Plaintiff extrapolates from all this that it was inappropriate for the ALJ to have included this unsupported paragraph, and that the contents of this repeated paragraph tainted the ALJ's view of everything as he made his decision – thus making the ALJ's decision not credible.

Plaintiff presents this as an especially important issue because the paragraph is bereft of citations to any authority, this paragraph has only been found in ALJ decisions, and because Plaintiff does not believe this to be mere boilerplate language. Plaintiff's core concern is that she has been denied disability because she can drive, and that any other person with mental health issues could also be denied disability just because they can drive. While the court understands the concern here, the court finds that the inclusion of this paragraph of language does not undermine the ALJ's decision in this case.

The court does not agree with Plaintiff that the ALJ over-relied on Plaintiff's ability to drive while making his decision. The ALJ did consider what he believed to be inconsistencies regarding Plaintiff's driving abilities in the record. This consideration was an appropriate step for the ALJ to have taken. It was also just one step that the ALJ took – the ALJ considered the

7

entirety of the record and expressly evaluated many other factors in his decision. Although the paragraph of language in dispute here was brought up twice in the ALJ's decision, both times were in footnotes and there were several pages of other factors that the ALJ evaluated in the main body of text. Of additional import is that the language in the two relevant footnotes supports a finding that Plaintiff is capable of performing complex and dynamic tasks, and yet the ALJ did not make that finding. Instead, the ALJ found that Plaintiff had the RFC to perform a reduced range of sedentary work, with several limitations. To arrive at this finding, the ALJ clearly found the other factors at play much more significant to his RFC determination – and ultimately his disability claim decision – than the one factor pertaining to Plaintiff's ability to drive. Based on the above, the court finds no evidence to support that the ALJ over-relied on Plaintiff's ability to drive while making his decision, or that the ALJ's inclusion and consideration of the language in the disputed footnotes tainted his entire decision.

Considering the above finding, the court concludes that the paragraph of language in dispute would not have changed the ALJ's ultimate decision of denying Plaintiff's claim for disability in this case. Further, having reviewed the record, the court finds that there is substantial evidence to support the ALJ's decision – even if that paragraph of language were not considered. Therefore, since doing so would not affect the outcome of this decision, the court will not address the arguments regarding boilerplate language and sources.

In conclusion, the court finds that there is substantial evidence to support the ALJ's decision in Plaintiff's case; that this would remain true even if Plaintiff's driving ability factor were removed; that the inclusion or exclusion of the paragraph of language in dispute would not have affected the ALJ's ultimate decision regarding Plaintiff's claim for disability; and that the evidence does not support a finding that the ALJ overly-relied upon the disputed footnotes or

tainted his entire decision by considering that language. Accordingly, the court affirms the ALJ's decision in Plaintiff's case.

## CONCLUSION

Based on the above reasoning, the court AFFIRMS the ALJ's decision in this case. Accordingly, Plaintiff's appeal is DISMISSED.

DATED this 2nd day of May, 2022.

BY THE COURT:

*Dale A. Kimball*

DALE A. KIMBALL
United States District Judge